**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FREDDI CHAVELAS RESENDIZ,<br><br>                          Plaintiff,<br><br>                    *v.*<br><br>GRISHMA CORP. d/b/a GRAND AVENUE SUPERMARKET, SAAHIL GROCERY INC. d/b/a GRAND AVENUE SUPERMARKET, SUNIL PATEL a/k/a SUNNI PATEL, and INDIRA PATEL,<br><br>                          Defendants. | **COMPLAINT**<br><br>**Demand for Trial by Jury** |

Plaintiff Freddi Chavelas Resendiz, by and through his attorneys The Legal Aid Society and Covington & Burling LLP, alleges the following:

**PRELIMINARY STATEMENT**

1.      This action seeks redress for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"), New York Labor Law  § 190 *et seq.* ("NYLL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. ("NYCHRL").

2.      Defendants, Grishma Corp. d/b/a Grand Avenue Supermarket, Sunil Patel a/k/a Sunni Patel ("Mr. Patel"), and Indira Patel ("Mrs. Patel") (collectively, "Defendants") employed Freddi Chavelas Resendiz ("Mr. Chavelas" or "Plaintiff") as a stock clerk at Grand Avenue Supermarket, a supermarket located in Elmhurst, Queens, beginning in or about 2002. Defendant Saahil Grocery Inc. d/b/a Grand Avenue Supermarket incorporated in October 2012 and, upon information and belief, is a successor to Grishma Corp. and employed Mr. Chavelas from that date as a stock clerk at Grand Avenue Supermarket.

3.      Mr. Chavelas usually worked between 54 and 60 hours per week for Defendants until August 2013.  Throughout Mr. Chavelas's employment, Defendants failed to pay him the overtime compensation required by federal and state law, and at times failed to pay him the minimum wages required by federal and state law.

4.      In addition, Defendants discriminated against Mr. Chavelas, harassing him because of his sexual orientation, creating and allowing a hostile work environment in violation of the New York City Human Rights Law.

## JURISDICTION AND VENUE

5.      The Court has federal question subject matter jurisdiction over Mr. Chavelas's FLSA claim pursuant to 28 U.S.C. § 1331.

6.      The Court has supplemental jurisdiction over Mr. Chavelas's claims under NYLL and NYCHRL pursuant to 28 U.S.C. § 1367, because these claims are so closely related to Mr. Chavelas's claims under the FLSA as to form the same case or controversy under Article III of the United States Constitution.

7.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Mr. Chavelas is a resident of Queens and the unlawful employment practices complained of herein occurred in Elmhurst, Queens, within the Eastern District of New York.

## PARTIES

8.      Plaintiff Freddi Chavelas is a 43-year old man who currently resides in Queens, New York.

9.      Upon information and belief, Defendant Grishma Corp. owned and operated the supermarket known as Grand Avenue Supermarket, located at 85-15 Grand Avenue, Elmhurst, New York 11373. Defendant Grishma Corp. was dissolved on or around October 8, 2013.

10.     Defendant Saahil Grocery Inc. incorporated on or around October 19, 2012, with Defendant Sunil Patel named as Chief Executive Officer, and is currently active.  Upon information and belief, since on or about October 19, 2012 to present, Saahil Grocery Inc. owns and operates the supermarket known as Grand Avenue Supermarket, located at 85-15 Grand Avenue, Elmhurst, New York 11373, and is a successor to Grishma Corp.  There was no interruption or substantial change of the business operations of Grand Avenue Supermarket that occurred after Saahil Grocery Inc. was incorporated at least through the time of Plaintiff's constructive termination.

11.     Upon information and belief, Defendants Grishma Corp. and Saahil Grocery Inc. have been, at all relevant times, enterprises engaged in commerce within the meaning of FLSA in that (i) each has or had employees engaged in commerce or in the production of goods for commerce and handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) each had annual gross volume of sales or business not less than $500,000.

12.     Defendant Sunil Patel a/k/a Sunni Patel is an individual and, upon information and belief, is a resident of the state of New York.  Mr. Patel was a manager at Grand Avenue Supermarket at all relevant times.  Mr. Patel is a principal of Saahil Grocery, Inc.  Mr. Patel supervised Mr. Chavelas, had the power to hire and fire him and set the terms and conditions of his employment.

13.     Defendant Indira Patel is an individual and, upon information and belief, is a resident of the state of New York.  Mrs. Patel was a manager at Grand Avenue Supermarket at all relevant times.  Mrs. Patel supervised Mr. Chavelas, had the power to hire and fire him and set the terms and conditions of his employment.

14.     At all relevant times, Mr. Patel and Mrs. Patel, and Grishma Corp. and/or Saahil Grocery Inc. were each Mr. Chavelas's "employer" as that word is defined under the FLSA, NYLL and NYCHRL.

15.     At all relevant times, Mr. Patel and Mrs. Patel, and Grishma Corp. and/or Saahil Grocery Inc. employed no fewer than four employees including Mr. Chavelas.

## FACTUAL ALLEGATIONS

**Defendants' wage-and-hour practices violated state and federal law.**

16.     Mr. Chavelas began working at Grand Avenue Supermarket in 2000, when it was owned by Sam Song, a nonparty to this case.

17.     In or about 2002, Grand Avenue Supermarket, upon information and belief, was sold to a new owner, Grishma Corp. Mr. Patel and Mrs. Patel began operating the supermarket at that time. Mr. Chavelas continued working at the supermarket, and his responsibilities included stocking shelves and refrigerators, ordering products from suppliers, affixing price tags, cleaning, and occasional maintenance such as changing light bulbs and defrosting freezers.

18.     Mr. Chavelas's job duties included placing orders every week with various suppliers of products sold in the Grand Avenue Supermarket, including produce, dairy, frozen foods, grocery (e.g. canned foods, detergents, paper towels), and beverages.

19.     Mr. Chavelas would order approximately $14,000 to $16,000 worth of products every week, or the equivalent of $728,000 to $832,000 worth of products each year. Based on Mr. Chavelas's observations of the cost of goods that he would order each week, the grocery store's annual gross volume of business at all relevant times was not less than $500,000.

20.     Mr. Patel and Mrs. Patel decided and informed Mr. Chavelas what his hours and weekly pay would be, and both had the power to change his pay, as they did twice during the

4

course of Mr. Chavelas's employment.  Mr. Patel and Mrs. Patel each had the power to determine the rate and method of Mr. Chavelas's pay, and Mr. Patel paid Mr. Chavelas in cash each Saturday.  On most days Mrs. Patel would supervise Mr. Chavelas in the mornings, and Mr. Patel in the afternoons, each telling him what tasks needed to be done.  Both Mr. and Mrs. Patel had the power to terminate Mr. Chavelas's employment, as they reminded him on more than one occasion.  Mr. Chavelas observed Mr. Patel and Mrs. Patel hire and fire other employees of the grocery store.

21.     From 2002 to approximately April 2006 Mr. Chavelas generally worked from 7 a.m. to 5 p.m. each day, from Monday through Saturday, for a total of approximately 60 hours per week.  On most days Mr. Chavelas was not permitted to take a lunch break, and would eat his meals when he could between tasks.  During this time Mr. Chavelas was usually paid $400 per week.

22.     In or about April 2006, Mr. Chavelas asked for an increase in his compensation, and Mr. and Mrs. Patel agreed to increase his compensation by $25 per week, for a total of $425 per week.

23.     In or about April 2010, Defendants reduced his hours to 54 hours per week and reduced his pay to $400 per week.

24.     Mr. Chavelas rarely took days off.

*Minimum Wage and Overtime Pay*

25.     Both the FLSA and NYLL require employers to pay the required minimum wage rate. 29 U.S.C. § 206; N.Y. Lab. Law § 652.  Both the FLSA and NYLL require employers to pay overtime pay, that is, time-and-a-half of the regular rate of pay for hours worked over 40 in a week. 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

5

26.     The federal hourly minimum wage during the times relevant to this action was:

> effective September 1, 1997: $5.15
> effective July 24, 2007: $5.85
> effective July 24, 2008: $6.55
> effective July 24, 2009: $7.25

27.     The state hourly minimum wage during the times relevant to this action was:

> effective March 31, 2000: $5.15
> effective January 1, 2005: $6.00
> effective January 1, 2006: $6.75
> effective January 1, 2007: $7.15
> effective July 24, 2009: $7.25

28.     Mr. Chavelas's hourly pay fell below the required federal and state minimum wage rate during significant times of his employment with Defendants.  For example, Mr. Chavelas worked approximately 60 hours per week each week, and was paid $400 per week until April 2006, equivalent to an hourly rate of $6.66.  This rate was below the state minimum wage of $6.75 per hour in effect from January 1, 2006 through December 31, 2006.  From January 2007 through April 2010, Mr. Chavelas worked approximately 60 hours per week, and was paid $425 per week, equivalent to an hourly rate of $7.08.  This rate was below the state minimum wage of $7.15 in effect from January 1, 2007 through July 23, 2009, and below both the federal and state minimum wage of $7.25 that was in effect from July 24, 2009 through April 2010.

29.     Although Mr. Chavelas regularly worked more than 40 hours a week, Defendants never paid him overtime compensation as required by state and federal law.

*Record-keeping*

30.     Mr. Chavelas was usually paid every Saturday by Mr. Patel, who gave him an envelope containing Mr. Chavelas's pay in cash.

31.     Defendants did not give Mr. Chavelas a pay stub or any document or other statement indicating the hours that he worked or his rate of pay, including wage notices or wage statements required by state law. NYLL § 195(1)(a).

32.     Upon information and belief, Defendants did not have a punch clock or other time-keeping system to keep track of the hours that Mr. Chavelas worked nor did they preserve any records of the wages, hours, and other conditions and practices of employment of Mr. Chavelas, in violation of federal and state law. 29 U.S.C. § 211(c), 29 C.F.R. § 516.2, and NYLL § 661.

*Interference with exercise of FLSA and NYLL rights*

33.     Defendants took deliberate steps to keep Mr. Chavelas from understanding that he had the right to receive minimum wage and overtime pay as well as his other rights under the law.

34.     For several years, Defendants did not post any wage-and-hour information as required by state and federal law, 29 C.F.R. § 516.4 and 12 N.Y. Comp. Codes R. & Regs. § 142-2.8.  When they eventually put up a poster informing employees of their rights to minimum wage and overtime, Mr. Chavelas inquired about why he was not paid such wages or overtime and Defendants told him that those protections did not apply to him.

35.     In addition, several times, Defendants affirmatively sought to conceal the fact that Mr. Chavelas was their employee from individuals they perceived to be government authorities. Upon information and belief, Defendants did so to avoid paying Mr. Chavelas the required wage rates or to avoid providing him other rights and protections, such as the right to receive workers' compensation.

**Defendants discriminated against Mr. Chavelas because of his sexual orientation.**

36.     In 2006 Mrs. Patel learned from Mr. Chavelas that he was gay, and asked him several intrusive personal questions about his sexual orientation.  Shortly thereafter, Mrs. Patel told Mr. Chavelas, in a derogatory tone of voice and manner, that she thought that he was sick.  Mrs. Patel repeated this comment as frequently as several times a week for the remainder of Mr. Chavelas's employment with Defendants.  Mrs. Patel also began snapping her fingers in order to get Mr. Chavelas's attention, an action that she did not perform prior to learning of Mr. Chavelas's sexual orientation and something she did not do with any other employee.  She also told Mr. Chavelas that he was lucky that she tolerated his sexual orientation.

37.     Mr. Chavelas never observed Mrs. Patel making such demeaning statements to other employees at the grocery store, or otherwise treating them badly because of their sexual orientation.

38.     Upon information and belief, Mrs. Patel told Mr. Chavelas's co-worker Eddie that Mr. Chavelas was sick.  She told another co-worker Remberto, a butcher, that Remberto should not talk to Mr. Chavelas because Mr. Chavelas was sick, and that Remberto should stay away from Mr. Chavelas because Mr. Chavelas might hit on him.

39.     Mr. Chavelas learned of Mrs. Patel's comments to Eddie and Remberto, and was distressed by them, and by her comments and actions towards him, but did not want to jeopardize his job so he did not respond.

40.     After being constructively terminated from his employment with Defendants, Mr. Chavelas learned that Mrs. Patel also shared these thoughts with some customers.  Mr. Chavelas became depressed upon learning that Mrs. Patel was denigrating him because of his sexual orientation in front of not only co-workers but customers as well.

**Defendants retaliated against Mr. Chavelas and constructively terminated him.**

41.     In or about June 2013, Mr. Patel and Mrs. Patel reprimanded Mr. Chavelas for reading the poster informing employees about their rights to minimum wage and overtime.  Mr. Patel told him that there was nothing relevant to Mr. Chavelas in the poster.  Mr. Patel then left, and Mrs. Patel told Mr. Chavelas that he should be grateful to have the job that he had, because other places would not hire him, in part because he was gay.  Mrs. Patel told him that there was something wrong in his mind to believe that he had any rights, and that he had to immediately do whatever she told him to do.

42.     Mr. Chavelas told Mrs. Patel that, based on the information in the poster, he could bring a legal action against them.  Mrs. Patel replied by telling Mr. Chavelas that she would go to the location where Mr. Chavelas worked his second job and "make a scandal."  She also threatened to call law enforcement authorities.

43.     Mr. Chavelas grew upset and returned to the back of the store to continue mopping.  A few minutes later Mrs. Patel snapped her fingers at him and asking him to return to the front of the store, despite the fact that Mr. Chavelas had repeatedly asked Mrs. Patel to refrain from this derogatory gesture.  Mr. Chavelas told Mrs. Patel that he did not have to tolerate her treatment of him any longer and left the store.  Mrs. Patel called him on the telephone repeatedly to tell him he was stupid and "acting like a baby."  Finally Mrs. Patel apologized and asked Mr. Chavelas repeatedly to return to the store.  Mr. Chavelas agreed, on the condition that she cease her abusive conduct and words toward him.

44.     Mr. Chavelas returned to work and for three days Mrs. Patel refrained from making derogatory comments toward him.  However, shortly thereafter Mrs. Patel increased her hostile and derogatory comments and actions.  She began to monitor Mr. Chavelas on the store

security camera and continually ordered him to work faster.  She repeatedly called him "stupid," yelled at him in front of customers and co-workers, and asked Mr. Chavelas why he worked so hard, and why he needed to make money at all if he had a boyfriend who should have been able to support him.

45.     Mrs. Patel's abuse continued and in August 2013, Mr. Chavelas realized that he could no longer endure Defendants' abuse and made the decision to leave his employment with Defendants.  Mr. Chavelas' last day of work for Defendants was on or about August 24, 2013.

## CLAIMS FOR RELIEF

### First Claim for Relief:
### Federal Minimum Wage Violations

46.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

47.     Plaintiff was employed by an enterprise engaged in commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 206(a), because he was employed by a business that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and that has an annual gross revenue of at least $500,000.

48.     Section 6(a) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206(a) provides that any employee engaged in commerce shall be paid wages at a rate not less than $7.25 per hour effective July 24, 2009.

49.     Defendants failed to pay Mr. Chavelas the federally mandated minimum wage from July 24, 2009 through April 2010.

50.     Defendants' failure to pay Mr. Chavelas the minimum wage was willful and intentional.  Defendants did not make a good-faith effort to comply with the FLSA with respect to their compensation of Mr. Chavelas.

51.     Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount to be determined at trial and to an equal amount of liquidated damages, as well as interest, reasonable attorneys' fees, and costs of this action pursuant to 29 U.S.C. § 216(b).

**Second Claim for Relief:**
**<u>Federal Overtime Violations</u>**

52.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

53.     Plaintiff was employed by an enterprise engaged in commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), because he was employed by a business that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and that has an annual gross revenue of at least $500,000.

54.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a)(1) provides that no covered employee shall work for a workweek longer than forty hours unless he receives compensation for those excess hours at a rate of one and one-half times the regular rate at which he is employed.

55.     Defendants failed to compensate Plaintiff the federally mandated overtime wages due for hours worked in excess of forty hours per week for all weeks that Mr. Chavelas worked for Defendants, from 2002 until Mr. Chavelas's  constructive termination on August 24, 2013.

56.     Defendants' failure to pay Mr. Chavelas overtime wages was willful and intentional.  Defendants did not make a good-faith effort to comply with the FLSA with respect to their compensation of Mr. Chavelas.

57.     Plaintiff is entitled to an award of damages for unpaid overtime wages in an amount to be determined at trial and to an equal amount of liquidated damages, as well as interest, reasonable attorneys' fees, and costs of this action pursuant to 29 U.S.C. § 216(b).

**Third Claim for Relief:**
**Retaliation under Federal Law (FLSA)**

58.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

59.     The Fair Labor Standards Act prohibits retaliation by employers against employees who exercise their rights under the law, making it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." 29 U.S.C. § 215(a)(3).

60.     Defendants constructively terminated Plaintiff's employment by threatening to jeopardize his employment with a second employer, and to report him to law enforcement agencies, if he instituted a legal proceeding to enforce his rights under the FLSA.

61.     As a result of Defendant's retaliation, Mr. Chavelas has suffered loss of past and future wages, and is entitled to reinstatement, back pay, and front pay, as well as compensatory damages, in amounts to be determined at trial, liquidated damages, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**Fourth Claim for Relief:**
**New York State Minimum Wage Violations**

62.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

63.     At all times relevant to this action, plaintiff was employed by defendants within the meaning of New York Labor Law ("NYLL") §§ 2 and 651.

64.     At all times relevant to this action, defendants were employers within the meaning of the NYLL.

12

65.     Section 652 of the NYLL provided that any employee employed in New York State shall be paid wages at a rate not less than $6.75 per hour, effective January 1, 2006, $7.15 per hour, effective January 1, 2007, and $7.25 per hour, effective July 24, 2009.

66.     Defendants failed to compensate Mr. Chavelas the minimum wage required by New York Labor Law at several times throughout Mr. Chavelas's employment.

67.     Defendants' failure to pay Mr. Chavelas the minimum wage was willful and intentional.  Defendants did not make a good-faith effort to comply with the minimum wage requirements of NYLL § 652 with respect to their compensation of Mr. Chavelas.

68.     Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount to be determined at trial and to liquidated damages, as well as interest, reasonable attorneys' fees, and costs of this action pursuant to NYLL § 663.

**Fifth Claim for Relief:**
**New York State Overtime Violations**

69.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

70.     The New York City overtime regulation provides that no employee in New York shall work more than forty hours per week unless she receives one and one-half times her regular rate of pay for all hours worked in excess of forty hours per workweek.  N.Y. Comp. Codes R. & Regs. § 142-2.2.  This overtime regulation was enacted pursuant to the authority delegated to the New York State Commissioner of Labor ("the Commissioner") to issue regulations governing overtime.  NYLL §§ 655–56.

71.     Defendants failed to compensate Plaintiff the state-mandated overtime wages due for hours worked in excess of forty hours per week for all weeks that Mr. Chavelas worked for Defendants.

72.     Defendants' failure to pay Mr. Chavelas overtime wages was willful and intentional.  Defendants did not make a good-faith effort to comply with the NYLL with respect to the overtime compensation of Mr. Chavelas.

73.     Plaintiff is entitled to an award of damages for unpaid overtime wages in an amount to be determined at trial and to liquidated damages, as well as interest, reasonable attorneys' fees, and costs of this action pursuant to NYLL § 663.

**Sixth Claim for Relief:**
**Failure to Provide Complete Statement with Every Payment of Wages (NYLL)**

74.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

75.     Section 195(3) of the NYLL, effective April 9, 2011, requires an employer to provide a statement with every payment of wages listing, among other things, each employee's regular and overtime rate of pay, the number of regular hours worked, and the number of overtime hours worked.

76.     Defendants never provided Mr. Chavelas with a statement of wages with his weekly pay containing any information required by NYLL § 195(3).

77.     As a result of the defendants' violation of NYLL §§ 195(3), defendants must pay Mr. Chavelas statutory damages as provided for by NYLL § 198(1-d).

78.     Section 661 of the NYLL, effective April 9, 2011, requires employers to "establish, maintain, and preserve for not less than six years contemporaneous, true, and accurate payroll records showing for each week worked the hours worked, the rate or rates of pay and basis thereof" for each employee.

79.     Upon information and belief, Defendants never established, maintained or preserved any payroll records showing hours worked and wages paid as required by NYLL § 661.

**Seventh Claim for Relief:**
**Retaliation under State Law (NYLL)**

80.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

81.     New York Labor Law prohibits retaliation by employers against employees who exercise their rights under the law, making it unlawful to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, . . . [or] (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter."  N.Y. Lab. Law § 215(1)(a).

82.     Defendants constructively terminated Plaintiff's employment by threatening to jeopardize his employment with a second employer, and to report him to law enforcement agencies, if he instituted a legal proceeding to enforce his rights under the NYLL.

83.     Plaintiff is entitled to an award of liquidated damages and compensatory damages, including back-pay, costs and reasonable attorneys' fees, pursuant to NYLL § 215(2)(a).

**Eighth Claim for Relief:**
**Sexual Orientation Discrimination Under City Law (NYCHRL)**

84.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

85.     New York City Human Rights Law prohibits discrimination by employers in the "in terms, conditions or privileges of employment," against an employee because of that

employee's "actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status." New York City, N.Y., Code § 8-107(1)(a).

86.   Defendants discriminated against Plaintiff in the terms, conditions and privileges of employment, and created and maintained a hostile work environment, because of his sexual orientation.

87.   As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered, and will continue to suffer, irreparable injury, emotional distress, mental anguish and other compensable damages.

88.   Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, damages to compensate him for past and future emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest, pursuant to New York City, N.Y., Code § 8-502.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment:

a)   Declaring that defendants have violated the FLSA and the NYLL;

b)   Awarding unpaid wages, including minimum wage, plus liquidated damages, for violations of the FLSA and the NYLL, and regulations thereunder, pursuant to 29 U.S.C. § 216(b) and NYLL § 663;

c)   Awarding overtime pay, plus liquidated damages, for violations of the FLSA and the NYLL, and regulations thereunder, pursuant to 29 U.S.C. § 216(b) and NYLL § 663;

d)  Awarding legal and equitable relief for his retaliatory termination under the FLSA including, without limitation, employment, reinstatement, payment of wages lost, compensatory damages, liquidated damages, and reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b);

e)  Awarding statutory damages for failure to provide a complete statement with every payment of wages, pursuant to NYLL § 198(1-d);

f)  Awarding liquidated damages and compensatory damages, including back-pay, costs and reasonable attorneys' fees, for retaliation in violation of the NYLL, pursuant to N.Y. Lab. Law § 215(2)(a);

g)  Declaring that Defendants engaged in unlawful employment practices prohibited by the NYCHRL, § 8-107(1)(a) by discriminating against Plaintiff and creating a hostile work environment because of his sexual orientation;

h)  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, and otherwise making him whole for any losses suffered as a result of such unlawful employment practices, pursuant to New York City, N.Y., Code § 8-502;

i)  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

j)  Awarding Plaintiff punitive damages sufficient to punish and deter continuation of Defendants' discriminatory and unlawful employment practices;

k)  Awarding reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b), NYLL § 663, and NYCHRL § 8-502;

l)  Awarding pre-judgment interest to the extent allowed by law; and

m)  Awarding such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial

by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        August 18, 2015

                                                   Respectfully submitted,

                                              /s/ Swati R. Prakash
COVINGTON & BURLING LLP
Swati R. Prakash
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010

THE LEGAL AID SOCIETY
Seymour W. James, Attorney-in-Chief
Adrienne Holder, Attorney-in-Charge,
        Civil Practice
Karen Cacace, Supervising Attorney,
        Employment Law Unit
Young Woo Lee, Of Counsel
199 Water Street, 3rd Floor
New York, NY 10038
Telephone: (212) 577-3533
Facsimile: (646) 616-9287